I have. Now I'm really here. Thank you, Your Honor. My name is Kathleen McGarry and I'm here on behalf of the appellant in this case, Brandon Jones. My plan this morning would be to concentrate on the procedural problems that were in this case during the District Court's re-sentencing. You certainly don't want to concentrate on the facts. Actually, Your Honor, you know, that might be a good place to start. No, no, no, I don't want to take you off your honor. Well, no, Mr. Jones has never denied that he committed the crime. He has never denied that. And so, you know, he went in and he entered, you know, almost unheard of that he went in and entered a police straight up. So, you know, I'm not running from the facts in this case because he admitted them. The problem is that the things that came along the way caused his sentence for kidnapping to almost increase double. The first thing that caused the problem was the identification of the injuries in this case as serious bodily injury. Now I am aware that this Court has already reviewed the co-defendant's case in which the same kind of issue was raised. But the argument here is that whether or not this was a serious bodily injury, and it's important to look at the facts, I don't, I'm not trying to minimize at all what happened to this victim. It certainly was a terrifying event for him. But he came out of it with the only injury that remains is his vision is unchanged. He has some sensitivity to very bright light, which if he puts on a pair of sunglasses, he's fine. Does that meet the definition of serious bodily injury? I don't think it does. I think what happens in this case is because there were injuries and serious bodily injury was the lowest level that could have been enhanced, that that's what they did was they gave him serious bodily injury enhancement. His left eye, the pupil in his left eye doesn't operate like it used to. It's damaged and all that's required for serious bodily injury is protracted impairment of a function of a bodily member, organ or mental faculty. It seems like that applies. Why not? I'm not sure it does, Your Honor. If you look at what is protracted mean, it's a prolonged injury, but it's only, for him, it's only present on a bright sunny day. That's like saying someone's leg injury only is present when they're walking. Well, I mean, does it compare to a serious injury where somebody does perhaps lose the use of his leg or the use of a hand? That's why he gets two levels instead of four for a permanent injury. And I agree. And that's why, you know, we were arguing. But I mean, I think that I still think that, you know, if you have there should be this like almost a continuum of where the injury does fall. And in this case, the injury falls way off on the bottom of the scale. Well, let me ask you about this word serious. The the level is triggered by serious bodily injury, has the word serious in it. But then when it comes down to definition, it talks about protracted impairment of a function of a bodily member. That point doesn't seem to repeat the word serious. Was that intentional? Does serious drop out or what? I don't know, Your Honor. I mean, it's just, you know, because if you look at the guidelines themselves, there's three definitions that deal with injury. Just bodily injury, serious bodily injury, and then permanent bodily injury. And so, but in the kidnapping guideline, the only injury that was available was, were the serious bodily injury or the permanent bodily injury. The regular bodily injury wasn't present. And perhaps that would have applied, but that wasn't an available option. So I think they defaulted to the serious bodily injury. Well, if I may, Judge, it just seems to me that you tend to trivialize sight in favor of some other physical injury to the body. I'm not trivializing, Your Honor. I, you know, and maybe, maybe it's just, it's a personal kind of looking at it because I know I myself have a very high sensitivity to bright light. I mean, it's, you know, I don't know how it happened. I don't know what it happened to, but I don't think that it's something that, you know, affects my life to the effect that I would want somebody to serve an extra five to six years by virtue of that enhancement. So, I mean, it's not, I certainly, that is not my intent to trivialize the, the error in this case. The second issue as it relates to, excuse me. Substantive reasonableness? Procedural unreasonableness would be the, the issue number two, where we have this balancing of obstruction of justice and acceptance of responsibility. And I think that when we're looking at that issue, the timeline is very important. Mr. Jones, as I explained this pretty fully in the brief, ended up trying to escape from the Torrance Correctional Facility on November 1st. Then, two months later, he goes in, he enters a plea of guilty, straight up, as we talked about at the beginning of the argument, no plea deal, no offer, no we'll give you this for that, just enters the guilty, comes in and, what I would say, accepts responsibility. And yes, indeed, we had this escape attempt that occurred two months prior to that. But he's already going to get punished for that by virtue of the obstruction of justice enhancement. That doesn't diminish the fact that he could still get acceptance of responsibility for So we have this criteria that it's not impossible, but it's pretty unusual to get an enhancement for obstruction of justice, and also a reduction for acceptance of responsibility. I'm not, you know, at one point, How would you articulate the test as to when you would get both that enhancement and the reduction? I think that's where the timeline comes into effect. In the fact that the escape from the court, or he walked into court and entered the plea. And so, certainly the argument can be made that at that point, he had accepted responsibility. And it's interesting, I was at a sentencing guideline seminar, and I was talking to the speaker, and they were doing this guideline, and I said, ask everybody in the room how the common, you know, does it exist where you actually can get obstruction and acceptance? That obstruction doesn't take away the acceptance. And in a room of almost all probation officers, probably 80% probation officers, probably two-thirds of them raised their hand that they have in their PSRs recommended obstruction and acceptance of responsibility. So your point is a temporal one. You can obstruct justice, yes, and you're going to be accountable for that. But when we address acceptance of responsibility, it doesn't, isn't precluded by bad things you've done before, because obviously the worst thing you did before was the crime you're being charged with in the first place. Correct. And if that would prevent you from accepting responsibility, you'd never get it. So you're saying that temporally is important. At the time of your plea, are you remorseful for all that you've done, the substantive crime and the obstruction of justice crime? And I think also, yes, that's one of the things. Okay. Well, that makes a lot of sense. But then my question is, was there a subsequent obstruction of justice after that acceptance of responsibility? He was not ever charged. It's not really probably the appropriate word, but his offense was not enhanced for the alleged Santa Fe escape attempt, which is what we're doing. Did he take that into consideration, because your temporal criteria wouldn't help him there? I believe he did, and that's why we argue so strenuously in our brief that there was not a preponderance of evidence to prove the Santa Fe alleged escape attempt. And the court disagreed with you? The court did disagree with me. So then, does this case, I really frankly like your analysis of how to reconcile those clearest explanations I've ever heard, but I'm not sure factually that's going to help you here. Again, I go back to whether or not the state or the court, because the court is the one who actually did the investigation in this case, that determined or finally obtained records concerning the Santa Fe alleged escape attempt. And my concern is that I just don't think it reached that level of a preponderance of the evidence, and I think when the court is looking at the findings that the district court made in this case, you need to determine whether or not they're erroneous. And I think they are, because as I laboriously point out in my brief, if you look at each of the pieces of evidence, they all are the same. If I were to give each of you a piece of paper and have you come in and say what's on the piece of paper, that doesn't make the fact any stronger, because all three of you said it. And that's what's happened in this case, is that one marshal says, oh, I think there was an alleged escape attempt to the AUSA, and then everything seems to fall off of that. I mean, all of the evidence just kind of piggybacks on that same one statement. But I do hate these cases, and generally speaking, when some, or not, disciplinary cases or conditions of confinement cases, when people are going to bring a charge against somebody for having committed some sort of an offense in prison, they usually have enough evidence to meet the preponderance standard. They didn't bring any disciplinary charges in this case. They never pursued it. So he was, Mr. Jones was never given the opportunity to come in in front of a disciplinary board and say, you know, that's, you know, I didn't, that wasn't my weapon. He didn't have the opportunity before the court to say, I didn't do it. Well, he did say that through me. I mean, I certainly didn't call him to testify, or the court didn't ask him questions about that? He did not. No, the court did not. We, we entered in. Because we've always said that statements by attorneys aren't evidence. No, but I mean, we, we filed the objection, and then I, I certainly argued the basis of each of the prongs that was, you know, that the court used to, to enhance in this case. To say that, indeed, it didn't enhance. You know, I, I, again, you're, you're talking about, he's already been given an extra five to six years based on the obstruction of justice. I mean, if he had, if he had had the, the straight up charge of attempted escape, he would have been facing like 18 months, but he's already facing five to six years for that. And then, you know, if you come in and you, you say, I'm, I'm guilty, and you don't have a plea, I mean, if, if we're going to tell defendants that, or if I'm going to have to try to sell something to my client, and I say to them, you know, you're going to get nothing for this. He's like, well, why am I doing it? Why am I going to go in and plea to this case? I'll just, I'll make the victim come in, I'll make him relive that experience, I'll make the government bring those experts in. There was a firearm, right? There were potential other charges, serious. There was a firearm. It wasn't a workable firearm, but it was something that would, we didn't contest that there was a, a weapon looking like. Brandish, brandish a firearm to get the man in the truck. Okay. But again, he wasn't, I mean, that was not part of the sentencing guidelines. It's a speculative question. Why would someone do that? And one reason would be to avoid serious charges on top. I don't know if that's the case here. Are you contending that the guideline is miscalculated or it's almost sounds to me like you're making a 3553 argument that. No, because before we get to 3553, we have to have the correct calculation of the guidelines. Exactly. And procedurally, I'm saying that the district court, A, should not have given him serious bodily injury and B, should have given him acceptance of responsibility. And that's abuse of discretion? Well, it's a mixed question. Actually, both of those are mixed questions of law and fact, not, not necessarily abuse of discretion, where you do the law de novo and the facts clearly erroneous. And they're fact driven, right? I'm sorry? They're fact driven, these enhancements and the denial. F-A-C-T. Oh, fact. Yes. Yes. There are facts. Yes. I'll reserve the remainder of my time. Thank you. May it please the court. My name is Paul Mischlevitz. I represent the United States in this matter. The district court correctly found all of the facts that he used, both to determine that the victim in this carjacking suffered serious bodily injury, including but not limited to protracted loss of function of the left eye and the pupillary dysfunction, and also the extreme pain that he suffered during the beating for the several hours that the carjacking took. The district court also- He never, the victim never used the word extreme, is that correct? He said very painful. He said it was very painful. He said that he looked in the mirror the day after the carjacking, and his face looked like Rocky from the end of the movie. And you'll find that in volume four of the record on appeal during the victim's statement, which is on pages 50 to 53 of volume four of the record on appeal. Judge, the district judge found the serious bodily injury based on the protracted injury, which, as you noted, Your Honor, the protracted portion of the injury need not remain serious for the fact of a protracted injury to be a serious injury. But it is under a criteria that says serious, so I'm just curious why the word serious was dropped out of the protracted evaluation. I'm not really making a point. I'm asking a question. One of the ways to measure how serious an injury is when it is inflicted is whether it remains after healing is complete. And so one need not have permanent injury to have suffered a serious injury. I have a broken finger right now. I'm confident it's going to heal great, but it's serious right now. So one need not suffer. If I had had a broken toe, which hobbled me and I couldn't walk, and I knew it would get better, but once it got better, I would have an ingrown toenail protracted for the rest of my life. Does the protracted nature of that, once I'm healed, make it serious or not? Yes. Even though it's protracted in a non-serious consequence. Correct. As this court noted in Gallegos, the appeal of the co-defendant in this case, an upgrade for permanent bodily injury requires a seriousness of the permanence of the injury. But the lesser upgrade for serious bodily injury only requires that the injury to the or that the dysfunction of the organ or bodily function be protracted, not protracted in its seriousness. So the dropping out of the word serious is intentional. Yes, sir. And through the canons of construction, we don't assume that the people who wrote the rules that we followed didn't know what they were talking about. We couldn't assume that the dropping out of the seriousness in the protracted requirement was an accident, as a party might wish that you would do. But even the court made clear, the district court made clear, even if the he wasn't relying on the pupillary dysfunction that was protracted, the severe pain that the district court found, crediting the victim's statement at the original sentencing, would have been enough to support the enhancement. And the words that the victim used was, sorry, was that it was a very painful injury. And he described looking at himself in the mirror and thinking he looked like Rocky from the end of the movie, which the United States contends is it not only an independent grounds to support the serious bodily injury enhancement, but together, the two of them, the pain and injury that went away, bruises, bleeding, et cetera, added to the protracted pupillary dysfunction of the left eye, clearly serious. The district court made no error in that regard. So then we move on to the complaint of procedural error in the finding of obstruction and the not granting of acceptance for the two escape attempts. The defendant, I'm sorry, Mr. Jones does not contest the Torrance County escape attempt before the guilty plea. And we see from the guidelines that that is ordinarily exactly the kind of thing for which one gets an increase of two levels for obstruction of justice. So moving on to acceptance. What about Santa Fe? Yes. It is possible, as I noted in my brief and as counsel briefed, that the district court could grant someone acceptance of responsibility credit even if upgrading their offense level for obstruction. That is legally possible. The district judge had that power. But what Mr. Jones needs to win here is for it to be improper not to grant acceptance when giving an upgrade for obstruction of justice. And that's simply not the law. Mr. Jones tried to break out of Torrance County before pleading guilty, then pled guilty. And then after pleading guilty, tried to break out of Santa Fe County, different facility post plea attempt to escape. And the district court here ruled that because of the Torrance County escape attempt, Mr. Jones had not clearly accepted responsibility as the guidelines contemplate for that credit to one's offense level, but that as an independent justification, even if the court had Mr. Jones definitely wasn't going to get acceptance credit because of his attempt to escape from Santa Fe County after pleading guilty. So what do you think of Ms. McGarry's suggestion about that you might be able to get both if the enhancement event occurred before the acceptance of responsibility occurred? I guess you could live with that because that might wipe out the first attempt of escape, but you've got your second attempt. What I remember her saying is that Mr. Jones's offense level was not enhanced for the Santa Fe escape attempt, by which I heard her to mean was not enhanced for the Santa Fe escape attempt beyond where it was enhanced to by the non-finding of acceptance of responsibility based on the Torrance County escape attempt. That is factually true, but not the point. What Mr. Jones needs to win on acceptance of responsibility is for this court to rule that if a defendant does X conduct that is inconsistent with acceptance of responsibility before pleading guilty, he can't be penalized for that if he pleads guilty, even if he does the same thing inconsistent with acceptance of responsibility after telling a magistrate that he pleads guilty. Which is luckily not the rule, and we ask that it not become the rule. I understand that. And Ms. McGarry would like to, for her to really profit from this, her client, she'd have to argue that that is the rule. Let's put that second attempt aside and only add the first attempt. Would you agree that if the first attempt to escape occurred and then acceptance of responsibility, that at least it would be possible that he might get both an enhancement and a reduction? Absolutely. And I said that in my brief, the district court absolutely would have the power to determine that because of his acceptance of responsibility after the failed escape attempt from Torrance County, the district court would have had the discretion to find that he had effectively accepted responsibility for all the relevant conduct up until then. That is not what happened. And the law is not that the district court is required to find that one has accepted responsibility for all relevant conduct. Indeed, counsel correctly argued in her brief that one can gain acceptance of responsibility credit when one pleads guilty only to the elements of the charges and not to all relevant conduct. So it would be quite contrary to the current law, correctly cited by counsel, if the rule were that by pleading straight up, one accepts responsibility necessarily for every piece of relevant conduct and sentencing enhancement. If that were true, Ms. McGarry could not have argued all of the adjustments to the PSR's view of the sentencing enhancements that should have applied at the sentencing stage, which she vigorously argued. So the rule is that when a defendant pleads guilty, they plead guilty to the crime, but not to everything that could enhance the penalty for the crime. And that's one of the reasons that the current rule is the correct rule, which is that the district court has to determine when any given defendant might have accepted responsibility effectively, even though he has obstructed the prosecution of his conduct. Thank you. Thanks. So very briefly, other than the procedural complaints, which should fail for the reasons I've described, the complaint that the within guideline sentence was the appellate presumption of reasonableness of those guideline sentences, the guideline sentence of 360 months in this case, while it was less than I asked for at the district court, is certainly reasonable and should be affirmed. Subject to any other questions the court has, that's my presentation. Thank you, counsel. Thank you for yielding the rest of your time. Did you have any time? Yes, you did. Thank you. And then in 23 seconds, which I won't use all of. I would just ask the court to please examine the alleged Santa Fe escape attempt and determine whether or not the judge was clearly erroneous. I think we have set that out in very great detail in the brief, and I think that he was wrong in doing that. And then I would fall back on the argument, the temporal argument that I made originally. Thank you. Thank you, counsel. United States versus Dutch.